UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JAMES W. NUCKELS, III          )
                               )
V.                             )          NO. 2:08-CV-153
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security )

<u>REPORT AND RECOMMENDATION</u>

This matter is before the United States Magistrate Judge pursuant to 28 U.S.C. § 636 and the standing orders of this Court, for a report and recommendation regarding the Motions for Summary Judgment of the plaintiff [Doc. 8], and of the defendant Commissioner [Doc. 12].

Plaintiff is appealing his denial by the defendant of his applications for disability insurance benefits and supplemental security income under the Social Security Act. Plaintiff was 34 years of age at the time his applications were denied. He has a limited education. His past relevant work was as construction laborer and oil changer, which were unskilled vocationally and required up to heavy physical exertion.

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607

(1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988).

The applications were denied following a hearing before an Administrative Law Judge ["ALJ"]. Prior to the hearing, various medical records of the plaintiff were placed into the record. These medical records are summarized in plaintiff's brief as follows:

Plaintiff was admitted to Holston Valley Medical Center from May 1, 1989 through May 29, 1989, following a motor vehicle accident. Plaintiff was noted to have suffered multiple trauma with bilateral hemopneumothorax; fractured ribs; bilateral subcutaneous emphysema with pulmonary contusion, as well as hemoperitoneum; lacerations to the liver, spleen, left temporoparietal areas, left maxillary area, and facial region; and avulsion of the skin over the left parella area. On CT scan, Plaintiff was noted to have sustained hemorrhagic changes in the right basal ganglion area of the brain. During his admission, Plaintiff underwent exploratory laparotomy, splenectomy, repair and drainage of liver laceration, gastrostomy, insertion of bilateral chest tube, central line insertion, and insertion of hyperalimentation line. Upon evaluation by the speech therapist, Plaintiff was thought to have cognitive and language impairment, thus speech and hearing therapy was started. Upon discharge, Plaintiff was transferred to the Johnson City Rehabilitation Center for continued rehabilitation (Tr. 160-177).

Plaintiff received additional treatment at Holston Valley Medical Center on four occasions from June 23, 1992 through December 9, 1993, due to right shoulder pain, human bite wounds to hands, headache, and viral upper respiratory infection (Tr. 178-186).

Dr. Vinaya S. Belagode examined Plaintiff on December 8, 1998, at which time he was noted to have suffered severe head and abdominal trauma in 1989, with subsequent left-sided weakness. Review of systems was positive for ear infections, failing/blurred vision, shortness of breath, loss of appetite, difficulty swallowing, persistent nausea, alternating diarrhea and constipation, history of urine infections, muscle weakness, headaches, recurrent lower back pain, depression, nervousness, agitation, memory loss, moodiness, and feelings of worthlessness. The diagnoses were dyspnea or shortness of breath, dysphagia, irritable bowel syndrome, back pain, tobacco abuse, nausea, and depression (Tr. 205-208). Plaintiff has presented twice for physical therapy evaluation, upon referral by Dr. Belagode. On June 25, 2003, Plaintiff presented with complaints of pain from the middle of his shoulder blades down his back to his buttocks, as well as intermittent numbness and tingling, left-sided tremors, difficulty using his left hand, and short-term memory problems. The assessment noted signs and symptoms consistent with the diagnosis of low back pain, as Plaintiff presented with mid to lower thoracic pain and tenderness that intermittently causes tingling down

2

the lumbar spine to the buttocks, decreased lumbar range of motion, and decreased hip flexion and knee flexion strength on the left side. Plaintiff's condition improved and he was discharged on July 25, 2003 (Tr. 216-219). Plaintiff returned on March 18, 2004, with a history of back pain radiating to the lower extremities. Objectively, Plaintiff had visible gait deviation on the left secondary to residual deficits from his accident; he had visible and distinct palpable para-lumbar muscle tightness on the left; he had poor posture with forward head position, rounded shoulders, and decreased lordotic lumbar curvature; there was some weakness noted to the left knee extensors versus the right; and he had hamstring tightness. In addition, the examiner noted Plaintiff's history of traumatic brain injury which appears to possibly be interfering with his cognitive ability to comprehend secondary to after explaining his condition to his and how physical therapy will assist, he asked "how is physical therapy going to help this." Due to failure to keep appointments, Plaintiff was discharged on May 11, 2004 (Tr. 213-215).

Plaintiff received Emergency Room treatment at Holston Valley Medical Center on three occasions from October 25, 2004 through December 1, 2005, due to left lower leg pain and cellulitis secondary to spider bite, right hand contusion, and left index finger puncture wound with cellulitis (Tr. 220-223, 235-240). Admission was required from July 12, 2005 through July 24, 2005, due to the discharge diagnoses of left upper arm cellulitis, status post I&D for needle fragment in abscess, and hepatitis C positive (Tr. 224-234).

Plaintiff underwent consultative exam by Dr. Karl W. Konrad on March 23, 2006. Presenting complaints included lower back pain, intermittent tingling in the legs, history of head injury, and left-sided weakness. In summary, Dr. Konrad noted exam was remarkable for mild to moderate weakness of the left leg with muscle wasting and partial contracture of the left ankle with some abnormality of gait and mild abnormality of mental status, probably related to reported head injury. Dr. Konrad opined Plaintiff can lift and/or carry a maximum of 40 pounds occasionally, 20 pounds frequently; can stand and/or walk (with frequent breaks) for a total of six hours in an eight-hour workday; and can sit (with normal breaks) for a total of six hours in an eight-hour workday (Tr. 241-244).

On March 30, 2006, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk (with normal breaks) for a total of about six hours in an eight-hour workday; can sit (with normal breaks) for a total of about six hours in an eight-hour workday; can only occasionally push/pull (including operation of foot controls) with the left leg; can only occasionally (less than one-third of the time) climb ladders, ropes, and/or scaffolds; can frequently (less than two-thirds of the time) balance, stoop, kneel, crouch, crawl, and/or climb ramp/stairs; and must avoid even moderate exposure to hazards (machinery, heights, etc) (Tr. 245-252).

Plaintiff received treatment at Virginia Center for Integrative Medicine from February 2, 2006 through June 16, 2006. Conditions and complaints addressed during this time include lower back pain, intermittent left leg pain, degenerative disc disease, anxiety disorder, and status post head injury (Tr. 253-261). On February 2, 2006, MRI of the lumbar spine revealed areas of fatty marrow replacement, with a more focal area seen in the L4 vertebral body, possibly representing hemangioma rather than fatty change; desiccations and mild narrowing in the L5-S1 intervertebral disc; protrusion of disc material posteriorly in the midline at L5-S1, appearing to abut both of the S1 nerve roots; and mild narrowing of both of the L5-S1 neural foramina. The impression was L5-S1 degenerative disc disease with central disc protrusion involving both of the S1 nerve roots and mild

3

foraminal stenosis at L5-S1 (Tr. 260-261).

On September 1, 2006, Plaintiff underwent consultative exam by Elizabeth A. Jones, M.A. Plaintiff reported that he suffered brain hemorrhage and was in a coma following an automobile accident in 1989; that his brother was killed in the accident; that he quit school in the ninth grade at the age of 17, having had learning disabilities; that he has attempted to work since the automobile accident, but gets laid off; that depression caused his anxiety; and that his energy level is low. WAIS-III testing yielded a Verbal IQ score of 77, a Performance IQ score of 79, and a Full Scale IQ score of 76. WRAT-III testing revealed a sixth grade Reading level, a sixth grade Spelling level, and a high school Arithmetic level. Ms. Jones noted that both Reading and Spelling fell within the borderline line and Plaintiff may actually have a learning disability in this area. The diagnoses were polysubstance dependence and personality disorder, not otherwise specified, with dependent features. Ms. Jones opined Plaintiff should be able to understand and remember both simple and somewhat detailed instructions and should be able to make simple work-related decisions (Tr. 262-268).

On September 18, 2006, a reviewing state agency physician opined Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting (Tr. 269-286).

Plaintiff continued treatment at Virginia Center for Integrative Medicine from July 19, 2006 through July 10, 2007, due to low back pain secondary to degenerative disc disease, status post head injury, anxiety, bilateral leg numbness, joint pain, tremors, lumbago, bilateral knee pain, lack of energy, weakness, and gastroesophageal reflux disease (GERD) (Tr. 299-311).

[Doc. 9, pgs. 2-6].

At the administrative hearing, Dr. Norman Hankins, a vocational expert, testified. The ALJ asked Dr. Hankins to assume a person of the plaintiff's height, weight, education and work experience. He was asked to assume intellectual endowment in the borderline range. He was asked to assume an emotional disorder consistent with the opinion of Ms. Jones' mental assessment. He was also asked to assume this individual has hepatitis C. When asked if there were jobs such a person could perform, Dr. Hankins identified the jobs of hand packers, baggers, assemblers, sorters, inspecting or checking jobs, machine feeding and people who either put parts on a conveyor belt or take them off of a conveyor belt. There are approximately 45,000 to 50,000 such jobs in the State of Tennessee and approximately two

million in the national economy. (Tr. 19-20).

In his hearing decision, the ALJ found that the plaintiff has the residual functional capacity set forth in his hypothetical question to Dr. Hankins. Based upon the jobs identified by the VE, the ALJ found that the plaintiff was not disabled. (Tr. 20-22).

The plaintiff asserts that the ALJ erred in his finding regarding the plaintiff's physical residual functional capacity. He points first to the fact that Dr. Konrad's assessment stated that the plaintiff could "stand and/or walk (with frequent breaks) for a total of 6 hours in an 8 hour workday." (Tr. 244). He then points out that the State Agency physician, Dr. Diehl, while finding that plaintiff could lift greater weight than Dr. Konrad, reported that the plaintiff could only "occasionally" (less than 1/3rd of the time) climb ladders, ropes or scaffolds (Tr. 247), and should avoid even moderate exposure to hazards such as machinery and heights (Tr. 249). Dr. Konrad did not find or note any such limitations in his report. Plaintiff asserts that the ALJ did not explain "the rejection" of Dr. Konrad's requirement for frequent breaks while walking and Dr. Diehl's restrictions on climbing and being around hazards. In fact, plaintiff notes that the ALJ did not even mention them in his decision when describing the records from these two physicians. (Tr. 15).

It is important to note that the ALJ did not agree with either doctor with respect to the plaintiff's lifting capabilities. The lifting requirement for light work is limited to 20 pounds occasionally and 10 pounds frequently, and this was the capacity adopted by the ALJ. Dr. Konrad opined that the plaintiff could frequently lift 20 pounds and occasionally lift or carry 40 pounds. Dr. Diehl opined that the plaintiff could meet the lifting requirements of medium work, with him frequently lifting 25 pounds and occasionally lifting 50 pounds. Thus, the

5

ALJ did, as asserted by the defendant, give the plaintiff a considerable advantage by limiting him to light work.

As for the issue of Dr. Konrad's "frequent breaks" and the limitations of Dr. Diehl, the ALJ obviously did not adopt all of the limitations of either physician. He apparently adopted more of Dr. Konrad's findings than those of Dr. Diehl, but he did state in his hearing decision that "great weight is given to the State Agency medical consultants." (Tr. 20). The Sixth Circuit has gone so far as to allow an ALJ to utilize the opinion of a State Agency physician even over that of a *treating* physician. *See, Combs v. Commissioner of Social Security,* 459 F.3d 640 (6th Cir. 2006). The Court does not believe that the ALJ's findings were unsupported by substantial evidence. Also, as a practical matter, most, if not all, of the jobs identified by the VE do not involve being around hazards or climbing. Dr. Hankins even testified to this on cross-examination by the plaintiff's counsel. (Tr. 46). The ALJ wrote a very detailed and thoughtful decision. Also, if the plaintiff believes that the ALJ simply "forgot" about the frequent breaks mentioned in regard to standing and walking, the VE could have been cross-examined on that issue.

The plaintiff also asserts that the ALJ did not discuss the limitations described by the State Agency psychologist (Tr. 269-286). However, as pointed out by the Commissioner, the State Agency psychologist was filing out the required form based *solely* upon the testing and evaluation performed by Ms. Jones, who examined the plaintiff. The ALJ could and did adopt the findings of Ms. Jones verbatim and incorporated them into his residual functional capacity finding and his question to the vocational expert. Her report certainly most certainly constitutes substantial evidence.

It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be DENIED and the Motion for Summary Judgment of the defendant Commissioner [Doc. 12] be GRANTED.[1]

Respectfully Recommended:


 s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived.  Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).